UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

UNITED STATES OF AMERICA,

Plaintiff,

v.

JUSTIN ALAN CRABTREE,

Defendant.

Case No. 4:25-cr-00061-DCN-3

**MEMORANDUM DECISION AND ORDER**

## I. INTRODUCTION

Before the Court is the Government's Notice and Motion to Admit Evidence Under Federal Rule of Evidence 404(b) (Dkt. 205) and Defendant Justin Crabtree's Motion in Limine (Dkt. 214).[1] Briefing on these matters has been somewhat disjointed due to the fast-approaching trial and a variety of other factors—including the need for corrections and amendments. The Court and counsel have worked together closely, and all matters have now been briefed and are before the Court for resolution.

Upon review, and for the reasons set forth below, both Motions are GRANTED in PART and DENIED in PART. As part of today's ruling, the Court also orders trial be CONTINUED until November 30, 2026, to allow Crabtree a full opportunity to review the Government's recently-disclosed discovery and complete all necessary trial preparations.

[1] Crabtree filed an original motion (Dkt. 208) and then an amended motion (Dkt. 214) to correct certain mis-statements in the original motion.

## II. BACKGROUND

On February 2, 2025, a federal grand jury indicted Crabtree and four co-conspirators for Conspiracy to Distribute and Possession with Intent to Distribute Methamphetamine. Dkt. 2. A recent Superseding Indictment added evidence of Crabtree's prior criminal convictions for purposes of a sentencing enhancement. Dkt. 178, at 2.

Crabtree is the only defendant who has not pleaded guilty or been sentenced in this case. His trial is set to begin in less than one week, on October 26, 2026.

On October 15, 2026, and in preparation for trial, the Government filed a Notice and Motion to admit some of Crabtree's prior criminal convictions under Federal Rule of Evidence 404(b). Dkt. 205. On October 19, 2026, Crabtree filed a Motion in Limine outlining various evidentiary issues he wants excluded at trial. Dkt. 214. As part of that motion, Crabtree requested the Court immediately release him so he can prepare for trial. Dkt. 214-1, at 12–13.

Because Crabtree requested immediate release, the Court directed the Government to respond to that portion of Crabtree's Motion by close of business on October 19, 2026, and gave Crabtree until 9:00am on the morning of October 20, 2026, to reply. The Court also set an expedited briefing schedule on the remaining issues in Crabtree's Motion.

The Government timely opposed Crabtree's Motion for Release. Dkt. 215.

The Parties then informed the Court they wished to expedite briefing even faster so the Court could rule in time for them to prepare witnesses, finalize travel, and attend to other duties (in this case and others) before the end of the week. The Court agreed.

The Government emailed its response brief to the Court and opposing counsel late

in the evening on October 19, 2026, indicating it would file the same in the morning. Crabtree filed his reply earlier this morning (before the Government's response was filed). Dkt. 220. Crabtree's brief includes his response to the Government's 404(b) motion and his reply to his Motion in Limine (including the previously expedited issue regarding release). The Government eventually filed its response later in the morning. Dkt. 222.

## III. LEGAL STANDARD[2]

"Motions in limine are well-established devices that streamline trials and settle evidentiary disputes in advance, so that trials are not interrupted mid-course for the consideration of lengthy and complex evidentiary issues." *Miller v. Lemhi Cnty.*, 2018 WL 1144970, at *1 (D. Idaho Mar. 2, 2018) (citing *United States v. Tokash*, 282 F.3d 962, 968 (7th Cir. 2002)). "The term 'in limine' means 'at the outset.' A motion in limine is a procedural mechanism to limit in advance testimony or evidence in a particular area." *United States v. Heller*, 551 F.3d 1108, 1111 (9th Cir. 2009) (quoting Black's Law Dictionary 803 (8th ed. 2004)).

Because "[a]n in limine order precluding the admission of evidence or testimony is an evidentiary ruling," *United States v. Komisaruk*, 885 F.2d 490, 493 (9th Cir. 1989), "a district court has discretion in ruling on a motion in limine," *United States v. Ravel*, 930 F.2d 721, 726 (9th Cir. 1991). Further, in limine rulings are preliminary and, therefore, "are not binding on the trial judge [who] may always change his mind during the course of a trial." *Ohler v. United States*, 529 U.S. 753, 758 n.3 (2000).

---

[2] The broad legal standard for motions in limine is outlined here. Issue-specific standards will be included below.

## IV. ANALYSIS

In his Motion in Limine, Crabtree seeks an order from the Court regarding six issues. The Court will address each it turn. Before doing so, some additional background is helpful.

This was a large investigation involving multiple law enforcements agencies across multiple states. It resulted in a multi-defendant criminal conspiracy and distribution case. The Court has recounted the underlying factual history and incorporates the same here by reference. *See* Dkt. 122.

Relevant here, in February 2025 Torres's girlfriend, Mekosch, told police that between December 2024 and February 2025, Crabtree traveled with Torres to buy methamphetamine. On February 7, 2025, officers saw the two men together in a rental car and, after a lawful stop, found nearly 46 pounds of methamphetamine inside.

Around the same time, law enforcement seized co-defendant Carlos Torres's iPhone. On February 10, 2025, Pocatello Police Detective Michael Ballard attempted an extraction of the information on the phone. The attempt produced a partial data set that the Government has not been able to access. The Government disclosed a placeholder acknowledging that data set. To date the Government has not accessed the contents of the iPhone and represents it will not use anything from the iPhone at trial.

Around the same time, Michael Connely of the Nye County Neveda Sheriff's Office recovered a phone from Kirk Lizar. HSI Special Agent Eric Anderson took the phone to HSI Cyber Security Analyst Michael Hernandez, who extracted it. The Government produced the extraction, with Sergeant Hulet's May 9, 2025, report describing messages between Lizar and "Crappy." Crappy is purportedly Crabtree's nickname. Lizar is currently

incarcerated in Nevada.

More recently, on October 2, 2026, co-defendant Jessica Mekosch and her counsel met with Sergeant Mark Hulet and Assistant United States Attorney Blythe McLane. At that meeting, Mekosch turned over an iPad she claimed belonged to Torres. The iPad contained messages between Torress, Crabtree, and others.

This was the first time the Government became aware of the iPad. According to Sergeant Hulet's report, Mekosch agreed to turn over the iPad once a warrant issued, on the condition that he use only messages between Torres and Crabtree from February 1, 2025 – February 7, 2025. The Government subsequently applied for a warrant.

On October 5, 2026, United States Magistrate Judge Deborah K. Grasham issued a warrant authorizing the seizure of records and data that are evidence of offenses involving Torres and Crabtree between December 1, 2024, and February 8, 2025.

Sergeant Hulet seized the iPad that day and the Idaho State Police held it until Detective Ballard took custody on October 6, 2026.

Detective Ballard extracted the iPad on October 6, 2026, and signed a forensic report on October 7, 2026. The Government produced the report to Crabtree on October 8, 2026. The original extraction was intact, but the discovery copy was corrupted. When the Government learned of the problem, it re-produced the messages in PDF on October 15, 2026. The warrant papers followed on October 16, 2026. On October 19, 2026, the Government provided defense counsel a full copy of the download.

Also on October 15, 2026, the Government filed a notice regarding Detective Ballard but only attached his curriculum vitae. Dkt. 204. The next day, the Government

filed an amended notice and disclosure outlining Detective Ballard's expert testimony and what they expected him to testify about at trial. Dkt. 206.

As alluded to, both sides have had some minor hiccups in their filings such as timing, mis-statements, or incomplete arguments. To the extent those organizational or structural things have been remedied and corrected, the Court accepts the final products and will not address those issues further.

The Court turns now to Crabtree's substantive arguments. It will take them out of order from his brief for two reasons. First, some can be dealt with summarily. Second, some should be grouped together as they relate to similar issues.

**A. Torres's iPhone**

Crabtree asks the Court to exclude any and all evidence derived from Torres's iPhone 16 Pro. The Government has stated it has not been able to access any information from this iPhone and does not intend to offer any at trial. Accordingly, this portion of Crabtree's Motion is GRANTED.

**B. Kirk Lizar**

Crabtree next asks that the Court limit Kirk Lizar's testimony and any evidence related to Lizar's arrest in Neveda. The Government has represented it will not call Lizar nor will it offer the Nye County, Neveda, report, body camera video, lab results, as other-acts evidence. The Government represents that the sole testimony on this matter will come from Officer Connely of the Nye County Sheriff's Office. He will simply testify that he recovered the iPhone from Lizar during Lizar's arrest.

Accordingly, This portion of Crabtree's Motion is GRANTED.[3]

**C. The iPad**

This is the primary issue before the Court today. Crabtree seeks the exclusion of all evidence derived from the iPad because it was not produced in time for him to effectively review the information and adequately prepare for trial. Crabtree recognizes the Government only recently came into possession of the iPad. Nevertheless, he argues he should not have to choose between his right to a speedy trial and his right to be prepared for trial. The Court agrees. But the remedy is not exclusion; rather a continuance.

As for timing, the Court finds the Government was diligent. Mekosch brought the iPad to the Government's attorney on October 2, 2026. The Government obtained a warrant three days later, extracted the device the next day, and produced the signed forensic report two days after that. To be sure, this all happened in the weeks leading up to trial, but there is no indication the Government was aware of the iPad before October 2, 2026, or that it otherwise delayed investigating the information and turning it over to Crabtree.

Federal Rule of Criminal Procedure 16 controls discovery in criminal cases. When a party fails to comply with Rule 16, the Court may order disclosure, grant a continuance, exclude the evidence, or enter another just order. Fed. R. Crim. P. 16(d)(2). It "should not

[3] Crabtree recognizes the Government's concessions but maintains there are two unresolved issues. First, he argues Officer Connely should not reference Lizar's arrest; only that he recovered a phone from Lizar. Second, if the Government offers Lizar's text messages, Crabtree claims he has a right to attack them as hearsay under Federal Rule of Evidence 806. Because the Court does not know how Officer Connely will testify and/or whether the Government will introduce any text messages, it cannot rule on these issues at this time. At this point, the Court simply notes it is less inclined to grant the first request absent a compelling reason and agrees with the second that Crabtree likely has that right and the Government must comply with its *Giglio* obligations.

impose a sanction harsher than necessary to accomplish the goals of Rule 16." *United States v. Gee*, 695 F.2d 1165, 1169 (9th Cir. 1983). General Order 423 applies the same principle to material the Government does not have at arraignment: it "must be produced as soon as practicable after its discovery, but at a minimum in time for the defendant to make effective use of it at trial." General Order 423, Procedural Order § I.2.

The Court finds a continuance is the best option under the circumstances. The Government produced the information within days of obtaining it. But that was also within days of trial. Additionally, as will be explained next, there are unanswered questions about the discovery which must be fleshed out prior to trial. To avoid delay and protracted disagreements during trial, the Court will grant a six-week continuance for the parties to finalize this discovery and prepare for trial.[4]

Crabtree argues there are questions about authenticity, the chain of custody, and Mekosch's motives for turning over the iPad. He contends some statements are hearsay or otherwise irrelevant under Rule 403. And he suggests there is some contradictory evidence about whether he is "Crappy" and/or if the number associated with Crappy can be traced to him. These are all good points. However, because the Court does not know the full extent of the communications on the iPad, how the Government intends to use them, and how any witnesses will testify about those communications, it cannot rule on these issues at this time. Furthermore, most of Crabtree's concerns go to the weight of the evidence and are best raised at trial through objections and/or cross-examination.

[4] Crabtree's speedy trial clock does not run until January 4, 2027.

The last item, however, is the stickiest. Crabtree argues the Government needs to turn over the "complete iPad extraction." Dkt. 220, at 7. The Government apparently told Mekosch it would only search messages between Torres and Crabtree (and related location and user data) on the iPad. And that is what the search warrant authorized. Crabtree postures, however, that there could be other text messages which are exculpatory towards him so the Government should turn over the complete iPad extraction subject to a protective order. He claims that, while the warrant limited what the Government could search, it did not limit the Government's obligations under *Giglio* and *Brady*. The Government objects in principle, but notes if the Court were to order such, it agrees it should only do so under a protective order.

The Court cannot go as far as Crabtree suggests on the current record and will require additional briefing before ordering any additional discovery and disclosure. If the Government was only authorized to search for certain things and it turned all those things over, it has complied with its obligations. Said another way, if the Government did not have the authority to access—and was never in possession of—other text messages, Crabtree should not expect the Government to turn anything else over. Furthermore, information outside of what the Government was authorized to access has the additional problem that it relates to the private communications of other people not on trial.

In short, the Court will not compel the production of any additional information from the iPad beyond what has already been produced at this time.[5] Crabtree will have to

[5] As explained in the following footnote, the Court harbors some confusion regarding the status of this request. The Government represents it turned over "a copy of the download" just yesterday. Dkt. 222, at 3. The Court does not know if this satisfies Crabtree's concerns or not.

make a stronger showing that: (1) such exists and/or (2) that such is necessary for his defense. The Court fully recognizes Crabtree does not know what he does not know and that it may be hard to meet this burden. But the Court is concerned about accessing information that might be outside the four corners of the warrant or outside the Government's agreement with Mekosch.[6]

In sum, this part of Crabtree's Motion is DENIED to the extent he seeks exclusion of the information derived from the iPad. That said, the Court will order a continuance to ensure both sides are adequately prepared for trial.

### D. Detective Ballard's Testimony

Crabtree likewise moves for the exclusion of Detective Ballard's testimony arguing the disclosure about it was untimely. He also contends the amended disclosure is still lacking because it does not contain a complete statement of what opinions Detective Ballard will give at trial.

For the reasons explained above, the Court finds the disclosure was not untimely. The Government could not produce Detective Ballard's opinions until recently because it only obtained the iPad on October 2.[7]

---

[6] The Court does not know what agreement the Government had with Mekosch. And the Court is not implying any such agreement supersedes the warrant. But the Court is confused by the Parties' request that any further production should be turned over with a protective order. The Government should have already turned over everything. The warrant did not authorize additional extraction. Again, with quick briefing, the Court could simply be misunderstanding both sides' arguments. But for today's purposes, it will not compel anything further. The Court expects the Government to comply with *Brady* and *Giglio* and assumes it has done so in this case.

[7] From a hyper-technical standpoint, the Government might not be late at all. Under General Order 423 and Procedural Order § I.14(a) the Government's deadline was twenty-eight days after arraignment or forty-five days before trial, "whichever is later." Because the grand jury returned the Superseding Indictment on September 22, 2026 (Dkt. 178), twenty-eight days after fell on October 20, 2026. The Government filed its notice on October 16, 2026.

Next, the content. The Government has agreed to remove an inapplicable reference currently in its notice. It also postures that, while it called the document a "summary" of Detective Ballard's testimony as opposed to a "complete statement of all opinions"—*see* Fed. R. Crim. P. 16(a)(1)(G)(iii)—it is still in compliance with the rules. The Court reviews such disclosures routinely and confirms the Government's disclosure here is sufficient. It outlines Detective Ballard's opinions, how he reached those opinions, and his qualifications for giving those opinions. The Government is free to supplement as it deems necessary, and Crabtree is free to object to questions or evidence at trial as he sees fit.

This portion of Crabtree's Motion is DENIED.

**E. Crabtree's Prior Convictions (Rule 404(b))**

In its original motion, the Government noted its intent to admit two certified judgments showing Crabtree had been previously convicted of delivery of a controlled substance in Bonneville County, Idaho. Dkt. 205. Crabtree separately moved the Court for an order excluding any use of his prior convictions. Dkt. 214-1, at 11.

In its response to Crabtree's Motion in Limine, the Government has withdrawn its prior motion as it relates to its case-in-chief. It postures now that it will only use Crabtree's prior convictions to show knowledge or intent should Crabtree affirmatively disputes those elements. The Government further offers it will initially raise the matter outside the jury's presence to avoid surprise or prejudice. Finally, the Government concedes it needs to verify the timing of the convictions, judgements, and sentences for purpose of its § 851 enhancement.

These concessions aside, Crabtree still seeks the total exclusion of this information

under Rule 404(b), arguing the evidence is prejudicial.

While Crabtree's prior convictions may be slightly prejudicial, that concern is outweighed by Rule 404's purpose of inclusion, *see United States v. Sneezer*, 983 F.2d 920, 924 (9th Cir. 1992), and the notion that the information can be used to show "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b). If Crabtree testifies or otherwise disputes his ability, knowledge, or intent to have committed this crime, he will have opened the door, and the Government can bring in these convictions.[8]

This portion of Crabtree's Motion and the Government's Notice and Motion is GRANTED in PART and DENIED in PART as outlined. It is granted to the extent the Government cannot introduce Crabtree's convictions during its case-in-chief. It is denied in all other respects.

**F. Temporary Release**

At the outset of this case, Chief Magistrate Judge Raymond E. Patricco found Crabtree was a flight risk and danger to the community and ordered him detained pending trial. Dkt. 100.

The Court "may, by subsequent order, permit the temporary release of the person, in the custody of a United States marshal or another appropriate person, to the extent that the judicial officer determines such release to be necessary for preparation of the person's defense or for another compelling reason." 18 U.S.C. § 3142(i); *see also* 18 U.S.C. §

[8] Again, however, the Government should raise the issue with the Court first, outside of the jury's presence.

3142(f)(2).

"Courts considering whether pretrial release is necessary under § 3142 have considered: (1) time and opportunity the defendant has to prepare for the trial and to participate in his defense; (2) the complexity of the case and volume of information; and, (3) expense and inconvenience associated with preparing while incarcerated." *United States v. Torrone*, 454 F. Supp. 3d 1009,1018 (D. Nev 2020). "At a minimum, detained defendants seeking temporary release under [S]election 3142 (i) for 'necessary' trial preparations must show why less drastic measures—such as requests to continue the trial date (consistent with the Speedy Trial Act) or alternative means of communication (including in writing or by available remote conferences)—would be inadequate for their specific needs." *United States v. Villegas*, 587 F.Supp.3d 1010, 1013 (C.D. Cal. 2020).

A defendant bears the burden of establishing circumstances warranting temporary release. *Torrone*, 454 F.Supp.3d 1009 at 1018.

Here, Crabtree postures there are compelling reasons for his release; namely that he needs to help his counsel prepare for trial. Specifically, Crabtree argues the Government's disclosure of the iPad information necessitates his release as he is the only person who can explain the messages and verify other location and user data. Crabtree also notes that Mekosch (and his other co-defendants) have all been granted pre-trial release.

First, while it is true that Mekosch and others have been granted pre-trial release, individual circumstances are important. Take Mekosch for example. After an initial release followed by detainment, Mekosch was released to participate in a 60-day intensive residential treatment program. Dkt. 147. After completing that program, Mekosch was

released to a sober living facility with specific terms and conditions that she continue outpatient substance abuse treatment. Dkt. 161. Fundamentally, Mekosch's release was based upon factors not relevant here. Crabtree cannot simply say a co-defendant was released and, therefore, that means he should be released.

Second and more importantly, while the Court recognizes Crabtree needs to prepare for trial, there is no indication he cannot adequately do that under his present circumstances. Crabtree has not suggested he is unable to review the general evidence in this case (with or without counsel) while incarcerated nor that less drastic measures are inadequate.[9] Specifically regarding the newly produced digital discovery from the iPad, all Crabtree states is that his review "cannot be done through jail visits." Dkt. 214-1, at 13.[10] However, there is no explanation for this assertion.

While it would inevitably be *easier* for Crabtree to prepare for trial if he were released, in the absence of a compelling explanation otherwise, the Court cannot grant his request on this basis alone. The "qualifier 'necessary' here has teeth: section 3142(i) authorizes no temporary release of pretrial detainees just because it would be helpful, preferable, or even ideal for a defendant's trial preparations." *Villegas*, 587 F. Supp. 3d at 1013. "If federal courts had to order temporary release just because it would aid a

---

[9] Crabtree is currently incarcerated at the Bonneville County Jail. This is 53 miles from his attorney's law office. While not *overly* convenient, this is not a hardship for counsel to travel to meet with him. In fact, counsel has done so multiple times in this case. And to be sure, counsel does not argue the distance is unmanageable; the Court is simply noting this is not a circumstance where the defendant is incarcerated out of state. He is being held locally. His counsel is local. They can arrange meetings to review discovery and prepare for trial.

[10] *See also* Dkt. 220, at 3 ("[N]ative message files, call logs, and location data cannot be reviewed with a client through a jail visiting window, by letter, or by telephone . . .").

defendant's ability to work with counsel, the exception in section 3142(i) would swallow all detention orders." *Id*.

Finally, Crabtree states he has a release plan that would remedy any concerns raised at the initial detention hearing. Specially, he claims his parents would be his custodians, that he has a job lined up, and that he would be amenable to GPS and home monitoring. The Court is not opposed to the Government and Crabtree working together with United States Probation and Parole to explore these options. However, the Court will not release Crabtree at this time. The other Defendants have entered into plea agreements. Relevant here, the Court is concerned that because Crabtree is the only Defendant who has *not* entered into a plea agreement—and at least two co-defendants are going to testify against him—he could try to contact his co-defendants.[11]

The Court has weighed the competing arguments and finds Crabtree has not met his burden of establishing a compelling reason for release. This portion of his Motion is DENIED.

## V. ORDER

IT IS HEREBY ORDERED that:

1. The Government's Notice and Motion to Admit Rule 404(b) Evidence (Dkt. 205) is GRANTED in PART and DENIED in PART as outlined above.
2. Crabtree's Motion in Limine (Dkt. 208, amended Dkt. 214) is GRANTED in PART and DENIED in PART as outlined above.

[11] The Court is not implying Crabtree would try to intimidate anyone. The Court also recognizes restrictions on Crabtree's movements and monitoring could potentially alleviate some of these issues. Nevertheless, the Court harbors concerns about Crabtree's release plan given the status of his co-defendants.

3. Trial is CONTINUED to allow Crabtree a full and fair opportunity to review the recently obtained discovery from the iPad. A separate order resetting trial will issue. Because the parties have already filed their other pre-trial submissions—proposed voir dire, jury instructions, etc.—the Court will not reset those deadlines. If either party needs to file any addition, supplement, or new motion, they should contact the Court's law clerk to coordinate such efforts.

UNITED STATES COURTS
DISTRICT OF IDAHO

DATED: October 20, 2026

David C. Nye
U.S. District Court Judge